IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

VICTOR HUGH TUMBACO CHAVEZ,

       Petitioner,

   v.

BRIAN BELLEQUE, Superintendent,
Oregon State Penitentiary,

       Respondent.

Civil No. 08-287-BR

OPINION AND ORDER

MARK BENNETT WEINTRAUB
Assistant Federal Public Defender
151 W. 7th Avenue
Suite 510
Eugene, OR  97401

     Attorney for Petitioner

JOHN R. KROGER
Attorney General
LYNN DAVID LARSEN
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

     Attorneys for Respondent

**BROWN, Judge.**

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court **DENIES** the Petition for Writ of Habeas Corpus.

<u>**BACKGROUND**</u>

On August 27, 1998, a Clackamas County grand jury indicted Petitioner on charges of one count of Sodomy in the First Degree, five counts of Sexual Abuse in the First Degree, one count of Unlawful Sexual Penetration in the First Degree, and one count of Attempted rape in the First Degree. The victim was the eleven-year-old daughter of a family Petitioner and his wife resided with upon their move from Petitioner's native Ecuador.

The case was tried to a jury. The jury convicted Petitioner of one count of Sodomy in the First Degree, four counts of Sexual Abuse in the First Degree, one count of Unlawful Sexual Penetration in the First Degree, and one count of Attempted Rape in the First Degree. On May 25, 1999, the trial judge imposed concurrent and consecutive sentences for a total of 320 months of imprisonment.

Petitioner directly appealed. In a written opinion, the Oregon Court of Appeals affirmed. *State v. Chavez*, 172 Or. App. 326, 19 P.3d 923 (2001). Petitioner sought review from the Oregon

Supreme Court on four grounds:    (1) did the admission of Petitioner's statements to police violate his rights under the Geneva Convention; (2) did Petitioner knowingly and voluntarily waive his right to counsel after he requested counsel, but then volunteered information related to his crime; (3) was the admission of testimony from Petitioner's wife regarding the marital relationship probative; and (4) did the trial court violate Petitioner's due process rights when the court imposed consecutive sentences.[1]

The Oregon Supreme Court granted review to address the question of whether a suspect's statements to police must be suppressed if the Vienna Conviction was violated.    The Oregon Supreme Court affirmed the decision of the trial court and the Oregon Court of Appeals. *State v. Chavez*, 335 Or. 44, 56 P.3d 923 (2002).

Petitioner then sought state post-conviction relief ("PCR") alleging various ineffective assistance claims against trial and appellate counsel, trial court error, and prosecutorial misconduct. Following an evidentiary hearing, the PCR trial judge denied relief. Petitioner appealed and, through his court-appointed counsel, assigned error to the PCR court's denial of Petitioner's claim that appellate counsel was ineffective for

---

[1]Petitioner conceded, however, that his consecutive sentence claim was not preserved.

failing to challenge the consecutive sentences. Petitioner also filed a *pro se* supplemental brief in which he assigned error to: (1) the PCR trial judge's finding that Petitioner and his wife were properly informed of the benefits and problems of having her testify; (2) the PCR trial judge's analysis of Petitioner's wife's trial testimony; and (3) the PCR trial judge's finding that the evidence in the record supported Petitioner's guilt.

The Oregon Court of Appeals granted the state's motion for summary affirmance. Petitioner then sought review from the Oregon Supreme Court. In his Petition for Review, he advanced only his claim that counsel was ineffective for failing to challenge the consecutive sentences.

On March 7, 2008, Petitioner file his habeas corpus action in this Court. In his *pro se* Petition for Writ of Habeas Corpus, he alleges numerous claims for relief:[2]

### GROUND ONE

Petitioner received inadequate and ineffective assistance of trial counsel in violation of the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution, and the Oregon Constitution, when trial counsel's acts and/or omissions fell below a reasonable standard of professional representation in the following particulars:

### CONSECUTIVE SENTENCES

---

[2]The Court subsequently appointed counsel to represent Petitioner in this action, though the action proceeded on Petitioner's *pro se* Petition.

Petitioner's attorney should have objected to the consecutive sentences as provided by the Judge during his sentencing. Petitioner's case is directly affected by *State v. Ice*, 343 Or. 248 (Or 2007) 2007 WL 2949148. Petitioner presents this case to advance the issue and the case expeditiously and efficiently as this case has recently been decided and could only be put forward here.

The State of Oregon deprived Petitioner of his right to a jury trial and due process of law in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, section 11, of the Oregon Constitution, when the sentencing judge exceeded his/her proper authority by imposing a sentence in excess of the applicable statutory maximum sentence without requiring a jury determination of the requisite facts and without requiring that those facts be proved beyond a reasonable doubt. In *Ice*, the Oregon Supreme Court held that the rule from *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 LEd 2d 435 (2000) applies to the statutorily-required predicate facts beyond a reasonable doubt before a sentencing court has authority to impose a consecutive sentence. *See* ORS 137.1223 (2), (4) and (5). The *Ice* opinion emphasizes and reiterates the United States Supreme Court's "bright line" rule that:

"'Other than the fact of a prior conviction, *any fact that increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.'" *Ice*, 343 Or. 248, (slip op at 18) (emphasis in *Ice*) (quoting *Apprendi*, 530 US 490). The court reasoned that the United States Supreme Court's post-Apprendi statements have made it "inescapably clear that the rule * * * is not directed at the traditional discretion of judges to select a sentence *within the range the legislature has selected and the jury's verdict determines*, but sentences that a jury's verdict alone would authorize." *Ice*, 343 Or. 248, (slip op at 20) (emphasis in original).

a.  Trial counsel failed to employ the services of a culturally diverse, linguistic expert to testify, at the hearing on the Motion to Suppress, as to the meaning of the terms "understand" and "comprehend" to a foreign

person such as petitioner. Such testimony would have
established that although petitioner "understood" the
words of the Miranda warning, he did not "comprehend"
the meaning of those words, thereby making his waiver
his Miranda rights not knowingly, intelligently, or
voluntarily made.

b.   Trial counsel erroneously failed to cross-examine
State witness VanOrman [sic] during the Motion to
Suppress Hearing. Had counsel cross-examined Van Orman,
counsel could have obtained testimony from such witness
about how a person with petitioner's background would
have reacted to, or understood, police "questioning."
The state's witness stated on direct examination that
she had wide experience with persons of backgrounds
similar to petitioner. (T. 79, I. 19)[sic].

c.   Trial counsel improperly abandoned the VCCR issue
during the Motion to Suppress Hearing expressly telling
the trial court that he was not trying to argue that the
VCCR created individual rights beyond those that Miranda
confers.  Trial counsel affirmatively asked the trial
court not to consider the VCCR issue.

d.   Trial counsel failed to separate and argue the
Miranda warning issue from the Vienna Convention (VCCR)
issue during the Motion to Suppress Hearing. Counsel
incorrectly assumed that the issues were "the same
questions, and (the court) (could) resolve it by
focusing on the Miranda issue." (Tr. 110, I. 7-9).

e.   Trial counsel failed to file a brief in opposition
to the State's brief concerning the VCCR issue, prior to
the pre-trial Motion to Suppress Hearing. Additionally,
counsel was not prepared to address the issue during the
hearing.

f.   Trial counsel failed to call a member of the
Ecuadorian Consulate as a witness during the Motion to
Suppress Hearing. Testimony from a member of the
Ecuadorian Consulate would established, contrary to the
state's argument, all the rights and benefits petitioner
would have received if the Consulate had been contacted
prior to questioning by law enforcement personnel.

g.   Trial counsel incorrectly advised the court that
"(i)f a consulate was contacted, (it is) as if an

attorney had been contacted" and that they simply would
have advised petitioner not to say anything. (Tr. 109,
I. 19-23). This is inaccurate information. Counsel's
representation mischaracterizes what the Ecuadorian
Consulate would have done. The Consulate would have
afforded petitioner numerous benefits including but not
limited to, ensuring no statements were given to the
police without an attorney being present, and that
petitioner fully comprehended the Miranda warning.

h.    Trial counsel failed to conduct an adequate
investigation into the law related to this VCCR and how
it applied to petitioner. Counsel misinformed the court
that the VCCR "doesn't create additional substantive
rights." (Tr. 110, I. 13-14). Or personal rights.
Counsel made these and other representations about the
operation of the VCCR without first contacting the
Consulate and before understanding the complexities of
the language within the Treaty. Counsel made these
representations after merely reading the face of the
VCCR and clearly misunderstanding its meaning and
effect.

i. Trial counsel failed to object to the accuracy and
qualifications of Officer Roberts, the West Linn
official English/Spanish Interpreter. Specifically
counsel failed to object to the interpreter going beyond
his duty as interpreter and violating the Code of
Professional Responsibilities for interpreters in the
Oregon Courts (Code), in one (I) or more of the
followings [sic] particulars:

    1. when Officer Roberts read the Miranda Warnings
    card only in Spanish but never translated the card
    to the Court or to the English speaking judge as
    required under ORS 42.280 & ORS 1.150;

    2. when Officer Roberts improperly asked questions
    of petitioner that were not asked by the Detective
    during questioning, asking directly "do you
    understand your rights," after she had read the
    card and without the detective asking the question
    himself;

    3. When Officer Roberts stipulated for the record
    that "she was familiar with the Miranda Warnings in
    Spanish," but she never testified as to the

accuracy of the translation in English (Tr. P.23, I. 18-20);

4. when Officer Roberts failed to inform the court as required by the Code that she may not simply rely on somebody else's translation of the warnings card, when the card that she used in petitioner's initial contact was already translated. (See Code, Section 8, "Scope of Practice.");

5. when Officer Roberts acted as a co-interrogator, and not restricting her services to interpreting. Also, she testified on behalf of her employer, that nobody threatened, made any promises, or coerced petitioner. (Tr. 32, I. 224 to Tr. 33 I. 12) (See also Code, Section 3, "Impartially and Avoidance of Conflict of Interest...");

6. when Officer Roberts "interject(ed) her own words, phrases, or expressions, without completely and accurately interpreting what was said by other people [sic]. The detective should have spoken the words of the Miranda warnings, and she should have interpreted only what the detective said. (See Code, Section I, "Accuracy and Completeness.");

7. when Officer Roberts knowingly violated the Code, Section 10, when she failed to report to the court the "Ethical Violation" she committed in petitioner's case, when the detective had her read from a card without telling her the words to speak. By this action the detective was asking her to engaged [sic] in conduct outside the scope of interpreting. (See Code, Section 10 "Duty to Report Ethical Violations,");

8. when Officer Roberts knowingly violated the Code, section 7 when she "testif(ied) regarding the information that she had been hired to convey." Here Office Roberts not only interpreted, but also testified about the constitutionally significant Miranda warnings, and how the petitioner purportedly understood those rights.

j.  Trial counsel failed to object to the accuracy of the Spanish translation of the Miranda warnings card;

specifically, a portion of the card reads that a person has the right to have an attorney "present during your interrogation," which implies there will be an interrogation, during your interrogation, with or without an attorney.  The card contains other questionable language choices and grammatical errors that should have been objected or otherwise made the judge aware of;

k.  Trial counsel failed to establish, for the record, Officer Roberts' qualifications as a qualified interpreter as required under ORS 45.275(7) among other authorities;

l.  Trial Counsel failed to file a motion pursuant [to] the Oregon Evidence Code, (OEC) 505 AND ors 136.655 to exclude petitioner's wife from being called as a witness against petitioner.

m.  Trial counsel failed to advise petitioner and petitioner's wife that under the OEC, 505 & ORS 136.655 they were protected from any disclosure or being a part of any criminal or civil proceedings if they chose not to testify in those proceedings.

n.  Trial counsel failed to object to the court's denial of the Motion to suppress and also failed to object to the court's findings for the denial of the Motion to Suppress petitioner's statements;

o.  Trial counsel failed to object to, or otherwise move to strike the testimony of petitioner's wife as improper and irrelevant, with respect to "their sexual and marital relationship" pursuant to OEC 505 & ORS 136.655.

p.  Trial counsel failed to properly cross-examine petitioner's wife regarding the "alleged apology" petitioner sent to Mrs. VanOrman through petitioner's wife; specifically, trial counsel failed to inquire as to the context of the "alleged apology." Had counsel so inquired, he would have learned that it was not an apology for any of petitioner's wrongdoing, but for the pure fact to have Mrs. VanOrman involved in unnecessary criminal proceeding;

q.  Trial counsel failed to pursue defense discussed with petitioner.  Counsel stated to the court in the

opening statements that "he would prove how the alleged victim was not afraid of petitioner and that he would call witnesses who could testify as to this matter." However, counsel, with out consulting with petitioner, abandoned this defense.

r.  Trial counsel failed to call 2 key witness [sic], Mrs. Paula Summer, and Mr. Gearson Salazar.  These two (2) witnesses would have testified that the alleged victim did not show any sings [sic] of being afraid around petitioner.  Although Mr. Salazar was available at the trial, counsel failed to call him.

s.  Trial counsel failed to move for a continuance in order to prepare a defense case in petitioner's case. Trial counsel was unfamiliar with this case and did not take the time to investigate or to prepare a petitioner [sic] for trial, counsel had been appointed only 24 days prior to trial.

t.  Trial counsel failed to diligently investigate the facts and circumstances surrounding the state's case in one (I) or more of the following particulars:

    1.  When trial counsel failed to hire or otherwise request funds for an investigator, even though petitioner repeatedly asked counsel to do so;

    2.  When counsel failed to investigate or otherwise inquire of petitioner's wife regarding her statement about her sexual and marital relationship with petitioner "was not as frequent as she had expected."  Had counsel had [sic] inquire with petitioner's wife, he would have learned through her that the "absences" were due to petitioner's poor health;

    3.  When counsel failed to investigate or otherwise obtain the work and school records of Petitioner; petitioner's wife; and Mr. and Mrs. VanOrman, to establish an alibi for the alleged charges against petitioner;

    4.  When counsel failed to contact a critical defense witness to obtain his statement as to demeanor the alleged victim [sic] and to testify as to his conversation with the alleged victim when he

delivered the furniture to petitioner's new
residence.

u.  Trial counsel failed to properly communicate with
petitioner prior to the trial.  Counsel only visited
petitioner three (3) times in the county jail, only to
discuss the state's plea bargain offer, but never to
discuss any details or possible defense against the
charges.  Each visit was of 30 minutes or less;

v.  Trial counsel failed to object to the imposition of
consecutive sentences; specifically, trial counsel
failed to make any argument before the court that, count
8 (attempted Rape I) was not part of a separate act or
transition. Therefore, it could not be consecutive but
rather concurrent.

w.  Trial counsel failed to investigate CARES NW and the
Legislation behind Regional Assessment Centers and
Community Assessment Services in order to determine if
the Child Abuse Medical Assessment (CAMA) is neutral.

SECOND CLAIM FOR RELIEF:
Petitioner was denied adequate and effective assistance
of Appellate Counsel, in violation of the Sixth and
Fourteenth Amendments to the United States Constitution
and Article I, Section 11, of the Oregon Constitution
when Appellate Counsel improperly failed to argue in the
Court of Appeals that the imposition of consecutive
sentences violated petitioner's constitutional rights.
Additionally, counsel failed to raise the statutory
argument he made in the Court of Appeals when he filed
his Petition for Review with the Oregon Supreme Court.

THIRD CLAIM FOR RELIEF:
Petitioner was deprived of due process and equal
protection of the law in violation of the Fifth and
Fourteenth Amendments to the United States Constitution
and Article I, Sections 11 and 20 of the Oregon
Constitution in one (1) or more of the following
particulars:

a.  When the trial court erred in relying on the
testimony of Officer Roberts as a qualified
interpreter to support the court's factual finding
that Mr. Tumbaco-Chavez "was advised of his rights
in Spanish" (Tr. 115, 1. 10), and to support its

11 - OPINION AND ORDER -

legal conclusions that Mr. Tumbaco-Chavez "was appropriately advised of all his Miranda rights" (Tr. 115, 1. 189-19) and that there was no undue prejudice, pressure, influence or promises by the police to induce the statements" (Tr. 115, 1. 23 to Tr. 116, 1. 1);

b. When the court abused its discretion by denying petitioner's motion to suppress. The court erroneously based its denial under a misinterpretation of Miranda. The court failed to safeguard and secure the [petitioner's] privileges against self incrimination," by allowing Officer Roberts' statements, an unqualified interpreter and a vague translation of the Miranda warning to the Spanish language;

c. When the court abused its discretion by denying petitioner's motion to suppress, when the court based its denial on the Officer [sic] Roberts' reading of the Miranda warnings card only in Spanish but never translated the card to the Court or to the English speaking court as required under ORS 42.280 & ORS 1.150; at sentencing schemes that permit or require judges to impose sentences that are longer than.

d. When the court allowed Officer Robert's testimony in the hearing as to what has taken place during the police questioning, these actions are in violation of Section 7 of the Code for Interpreters ("The interpreter shall not publicly discuss ... or offer as an opinion concerning a matter in which the interpreter is or has been engaged, even when that information is not privileged or required by law to be confidential.");

e. When the prosecuted engaged in misconduct, when the prosecution should have known that one of his witness [sic], Officer Roberts, did state for the record her qualification as a certified interpreter, and the prosecutor did not stipulated [sic] for the court as to those qualifications as required by ORS 45.275(7);

All of the above listed errors, individually and/or in combination, substantially by trial counsel, appellate

counsel, the prosecutor and the Court, the outcome of petitioner's case would have been different.

In his Brief in Support of Petition for Writ of Habeas Corpus, Petitioner acknowledges the United States Supreme Court decision in *Oregon v. Ice*, 129 S. Ct. 711 (2009) that consecutive sentences may be imposed without having submitted the facts supporting them to a jury for decision forecloses the claim alleged in Ground Two.

Respondent argues Petitioner procedurally defaulted all the remaining grounds for relief because Petitioner failed to present them to the Oregon Supreme Court. Counsel for Petitioner addresses Respondent's procedural default argument by asserting actual innocence to excuse the procedural default. In support of this assertion counsel presents no facts; instead, counsel states:

> Here, counsel for [Petitioner] has been investigating the factual basis for his claim of actual innocence. That investigation is ongoing and not yet complete. Once completed, and if the facts warrant it . . ., leave will be sought to file an additional memorandum on this issue.

The Court notes no such leave has been sought and no evidence supporting Petitioner's actual innocence claim has been submitted.

As to the merits of the Petitioner's claims, Counsel for Petitioner addresses only the allegation that Petitioner's rights were violated when the trial judge denied a motion to suppress incriminating statements Petitioner made during custodial interrogation after having invoked his right to counsel and

against self-incrimination.  Respondent contends this claim argued by Counsel was not alleged in the Petition for Writ of Habeas Corpus and is not properly before this Court.

Finally, with respect to the remaining claims, in the Brief in Support of Petition, Counsel for Petitioner seeks leave to address them by way of a *pro se* supplemental memorandum.  However, neither Counsel nor Petitioner filed a formal motion requesting leave to do so.

## DISCUSSION

### I.    Trial Court Error in Denying Motion to Suppress

As noted, Respondent contends the claim addressed in Petitioner's Brief in Support of Petition was not alleged in the Petition for Writ of Habeas Corpus and, therefore, is not properly before this Court.  In his Brief in Support, Petitioner argues he invoked his right to counsel, did not knowingly and voluntarily waive that right, and, therefore, statements made after he invoked his right to counsel should have been suppressed.

In the Third Claim for Relief in his Petition, Petitioner alleges the trial judge erred in denying his motion to suppress his statements.  In support of this claim, Petitioner alleges the trial judge should not have relied upon the testimony of Officer Roberts as a qualified interpreter to support the court's factual finding that Petitioner was advised of his rights in Spanish or to

support the court's legal conclusion that Petitioner was appropriately advised of his *Miranda* rights and there was no undue prejudice, pressure, influence or promises by the police to induce the statements.

While Petitioner's *pro se* Petition is not a model of artful pleading, the Court finds, nevertheless, a sufficient nexus between the claims pleaded in the Petition and the claim argued in Petitioner's Brief in Support of Petition. Moreover, the Court finds Petitioner exhausted this claim in his direct appeal in state court. Accordingly, the Court addresses this claim on the merits.

### A. Legal Standards for Relief on the Merits

Under 28 U.S.C. § 2254(d)(1), habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).  A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Instead, habeas relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, --- S. Ct. --- 2011 WL 148587, * 12 (Jan. 19, 2011).

An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the ... case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U .S. at 413), *cert. denied*, 546 U.S. 963 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974.

In conducting a review under § 2254, this Court must look to the last reasoned state-court decision. *Van Lynn v. Farmon*, 347

F.3d 735, 738 (9th Cir. 2003) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002)), *cert. denied*, 541 U.S. 1037 (2004).  A written decision from the state court explaining the state court's reasoning, however, is not necessary to determine whether a state court's decision resulted from an unreasonable legal or factual decision. *Harrington*, 2011 WL 148587 at * 9.

**B.    Summary of Facts**

The facts underlying Petitioner's motion to suppress were developed at an evidentiary hearing before the trial judge. Detective Corbin arrested Petitioner on August 24, 1998, and brought him handcuffed to the West Linn Police Department for questioning.  Marcella Roberts, a native Spanish speaker and Community Services Officer with the West Linn Police Department acted as interpreter during a custodial interview.  Ms. Roberts spoke to Petitioner only in Spanish, and he responded primarily in English.  Ms. Corbin read Petitioner his rights from a Spanish-language card.  When asked if he understood those rights, Petitioner responded "Yes" in Spanish.

Detective Corbin then interviewed Petitioner.  Detective Corbin spoke only English, and Ms. Roberts translated his questions into Spanish.  Detective Corbin asked Petitioner if he knew the alleged victim, and Petitioner said "Yes."  The detective told Petitioner she had reported that he had sexually abused her.

Petitioner then said, in Spanish, that he would like to speak to an attorney.

At that point, Detective Corbin considered the interview over, stopped questioning Petitioner, and prepared to take him to jail.  Petitioner, however, then made a spontaneous incriminating statement regarding the victim's attempts to seduce him.

After Petitioner's statement, Detective Corbin asked Petitioner if he still wanted a lawyer, to which Petitioner replied "No, I want to talk."  Detective Corbin had Ms. Roberts ask Petitioner again, in Spanish, to clarify whether he wanted a lawyer or not.  She did so, and Petitioner responded in Spanish that he did not want a lawyer.  Petitioner then said he didn't "know how it works here" and "I want to talk to my wife before I do anything else."

Detective Corbin allowed Petitioner to telephone his wife. After that conversation, which was not overheard by either Detective Corbin or the interpreter, Petitioner returned to the interview room.  Detective Corbin asked Petitioner if he wanted to give a statement.  Petitioner responded, "I think I would like to have a lawyer."  Detective Corbin stopped questioning Petitioner.

Petitioner asked what would happen next.  Detective Corbin started describing the booking procedures at the jail.  Petitioner acknowledged understanding Detective Corbin and then, without prompting from Detective Corbin or the interpreter, began talking

again.  Petitioner stated that the victim had followed him around
and touched his body.  Detective Corbin testified to what happened
next:

> Q.    After the defendant had given you all these
> statements about how it was [the victim's] fault,
> what did you do?
>
> A.    At that point he said he thought he wanted a
> lawyer, and then – which means to me he is not
> sure.  And then he started to talk to me, and I
> took it that he wanted to give me a statement at
> tat time, so I asked him a question.
>
> Q.    Is this the first question that you asked him
> during the entire process?
>
> A.    During the entire process?
>
> Q.    Yes.  Is this the first time that you had asked him
> a question?
>
> A.    No
>
> Q.    Go ahead.  What was the question?
>
> A.    I asked him where [the victim] had touched him.
> And [Petitioner] said, quote, "On my body."
>
> I asked him what part of his body, and [Petitioner]
> said, quote, "I don't know what you call it here.  It is
> the middle part of a man."
>
> And I said, "Do you mean she touched your penis?"
>
> And [Petitioner] said, "yes."

Transcript, pp. 64-65.

Petitioner testified at the suppression hearing that the
interpreter told him he had the right to speak to a lawyer, and
that he understood her perfectly.  He also stated that after the

19 - OPINION AND ORDER -

telephone conversation with his wife, when he told Detective
Corbin he wanted a lawyer the Detective stopped asking questions.
Petitioner denied, however, that he volunteered any statements and
testified that whatever he said was in response to police
questioning.

The trial judge denied the motion to suppress. He explained
his reasoning as follows:

> THE COURT:  Okay, the Court finds the following facts
> from the suppression hearing, that although English is
> the second language of the defendant, by August of 1998
> at the time this interview was conducted, he had a
> reasonably good command of the English language.  At the
> time he was taken to the West Linn Police Department, a
> Spanish-speaking interpreter was made available and he
> was advised of his rights in Spanish at that time.  And
> in his testimony he stated he understood the interpreter
> perfectly.  The court also finds that throughout the
> interview, the defendant responded to the questions
> placed-posed by Detective Corbin in English often before
> Ms Roberts did the Spanish interpretation.  It's obvious
> to the Court -the Court finds beyond any doubt that the
> defendant was appropriately advised of all of his
> Miranda rights, that those were understood by him.
> Obviously, he understood his rights to an attorney
> because, in fact, he did request an attorney.
>
> I don't find that there is anything -- that there was
> any undue prejudice, pressure, influence or promises
> that were made by the police to induce him to make the
> statements.  And the statements, which the State seeks
> to offer, were volunteered by the defendant in this case
> after he had been advised and after questioning had
> ceased.  And the defendant's own testimony during his
> examination confirmed the fact that the questioning had
> ceased after the request for an attorney.
>
> The defendant's testimony about when he made the
> statements or whether he made the statements was
> ambiguous at best and certainly the officer's testimony
> with regard to what took place --

20 - OPINION AND ORDER -

(tape malfunction)

THE COURT: -- in cases interpreting the Oregon
Constitution or the United States Constitution that
elevates the requirement to provide the defendant with
a timetable of when their lawyer is going to contact
them at the jail, that when they're advised of their
rights, that that satisfies the constitutional
requirements of that. And it's, again, obvious to the
Court that given the defendant's understanding of
English and the fact that he understood the interpreter
perfectly, that he was well advised of his rights. And
any confusion that he might have about his custodial
situation was nothing more than a lay person would
typically have under those circumstances, and that his
nationality had nothing to do with him volunteering the
statements which were made.

Transcript, pp. 115-17.

### C. Analysis

The Fifth Amendment provides that "no person shall be

compelled in any criminal case to be a witness against himself."

A suspect subject to custodial interrogation has a Fifth Amendment

right to consult with an attorney, and the police must explain

this right prior to questioning. *Miranda v. Arizona*, 384 U.S.

436, 469-73 (1966). "When an accused invokes his right to have

counsel present during custodial interrogation, he may not be

subjected to further questioning by the authorities until a lawyer

has been made available or the suspect himself reinitiates

conversation." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.)

(citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)), *cert.*

*denied*, 540 U.S. 968 (2003).

After the accused requests counsel, a subsequent waiver must not be based on police-initiated questioning, but must be initiated by the accused. *Michigan v. Jackson*, 475 U.S. 625, 635-36 (1986), *overruled on other grounds by Montejo v. Louisiana*, 129 S. Ct. 2079 (2009). Further, once an accused has waived his rights, he is always free to re-invoke them. *Smith v. Ryan*, 2009 WL 4673773, *9 (D. Ariz., Dec. 3, 2009).

The government must establish the voluntariness of petitioner's statements by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). When considering whether statements are voluntary, a court must consider the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. *United States v. Kelley*, 953 F.2d 562, 564-65 (9th Cir. 1992). A statement is involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will. *Henry v. Kernan*, 197 F.3d 1021, 1026 (9th Cir. 1999), *cert. denied*, 528 U.S. 1198 (2000).

> The test of voluntariness is well established: "is the confession the product of an essentially free and unconstrained choice by its maker? ... The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

*Id.* at 1026-27 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)).

Overreaching includes lengthy questioning, deprivation of food or sleep, physical threats of harm, and psychological persuasion. *Kelley*, 953 F.2d at 565. When there is alleged psychological coercion, the issue is "whether the defendant's will was overborne" when he confessed. *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).

Here, the trial judge found Petitioner voluntarily re-initiated the conversation with Detective Corbin after Petitioner invoked his right to counsel. After considering testimony and evidence from the interrogating officer, the interpreter, Petitioner, and others, the trial judge concluded Petitioner understood his right to counsel and invoked that right, but then voluntarily waived the right by making spontaneous, unprovoked statements. This conclusion was not contrary to or an unreasonable application of clearly established law, nor was it based upon an unreasonable determination of the facts in light of the evidence presented in the suppression hearing.

Petitioner has not established that the trial court's denial of the motion to suppress, and the appellate courts' rejection of Petitioner's claim, "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 2011 WL 148587 at * 12. Accordingly, Petitioner is not entitled to habeas corpus relief.

**II.  Claims for Relief Not Addressed by Petitioner**

As noted, in his Brief in Support of Petition, Petitioner did not address the remaining claims alleged in the Petition. Respondent argues Petitioner procedurally defaulted all the remaining grounds for relief except the claim trial counsel was ineffective for failing to object to the imposition of consecutive sentences, which Petitioner concedes is no longer viable under *State v. Ice*, 129 S. Ct. 711 (2009).  Because Respondent's allegations of procedural default are correct with respect to these claims, and because Petitioner makes no showing of cause and prejudice or fundamental miscarriage of justice to excuse the procedural default, Petitioner is not entitled to relief on remaining grounds.  *See* 28 U.S.C. § 2248 ("[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.")

<u>CONCLUSION</u>

For these reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus and **DISMISSES** this action.

The Court **DENIES** a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this <u>26th</u> day of January, 2011.


                            <u>      /s/ Anna J. Brown      </u>
                            ANNA J. BROWN
                            United States District Judge